Case No. 16-6729, Samuel McGaw Jr. v. Sevier County TN Oral argument not to be received, 15 minutes per side I'd like to reserve 4 minutes for rebuttal. Alright. This is a case on appeal from the lower court who decided there was no qualified immunity for several corrections officers by stating there was a clearly established constitutional right to medical care. She was very general about that and just said because there was a clearly established right, the corrections officers did not provide medical treatment, therefore there is no qualified immunity. However, the court has stated before that a clearly established right to medical treatment cannot be generalized. It has to be specific. We have to look at the case specific. And in this case, the courts have also held that there is no clearly established right to medical treatment for an intoxicated detainee. We are saying that the corrections officers are entitled to qualified immunity because there was no clearly established constitutional requirement to take this drunk person to jail. Also, I'm sorry, to further medical treatment outside the jail. Well, the individual came in apparently as it was determined in the autopsy, and maybe based upon some things the decedent said at the time under the influence of both alcohol and drugs, there's something about his saying that he had been taking Roxas. Yes, sir. So if a person is severely intoxicated and it's not clear what the substance is on, but here the man was supposed to have been in such a bad state he couldn't even produce a urine sample and they couldn't understand what he was saying and all of that, why wasn't his condition so obviously deteriorated that even a lay person would have understood he should have been taken for medical care? When he came in, he was severely intoxicated, and the jailers inquired as to have you taken something else. He finally admitted three Roxas. They got the medical staff to come down and evaluate this person. The medical person said... When you say medical staff, you're just talking about this one person who was the LPN. Correct, John. She came down and evaluated Mr. McGall and said he was fine to be put into the drunk tank. What did her evaluation consist of? Blood pressure, vital signs, pulse oxygen, and checking his pupils, I believe, your Honor. The case law states that even in an extremely intoxicated condition, that's not enough to put a CO on notice unless there's something else that goes along with it, like with another case in Kendall. When you say intoxicated, do you mean only alcohol intoxication? No, I mean intoxicated with either alcohol and or drugs. But you're not stating that an intoxicated person is never entitled to medical care simply because they're intoxicated as opposed to some other medical infirmity, are you? What I'm saying is the Sixth Circuit has held that just because you're intoxicated does not give you a right to medical treatment unless you have something else, some exceptional thing that would warrant further medical treatment. And all the case law has held that... What cases do you have in mind for that? Meyer v. City of Presque, even extremely intoxicated condition, the detainee's not enough to put the corrections officer on notice. Shack, no constitutional right to medical treatment because you're intoxicated. And it's reasonable to believe that if you put this person in the drunk tank, he would sleep it off. Kendall? So how about this? I mean, I think what supports your argument is the fact that the officers consulted the nurse and they're allowed to rely on medical advice, they're not doctors or nurses themselves. So in one sense, they do that, they put him in the cell, they observe him every 20 minutes, but you might say given the seriousness of his condition, it was unusual not to walk into the cell. In other words, you're just looking through the window. How do you know the person's not having serious trouble? That seems like the hardest part of your argument. What's the answer to that? I don't have this case law written, but there are cases that say from the Sixth Circuit that monitoring the individuals in the jail cell is not a constitutional violation and there is a case that held that a detainee in the jail who was intoxicated and observed even every 25 minutes did not rise to the level of a constitutional violation. The plaintiff has not shown any cases that would show to the corrections officers that an extremely intoxicated person who has taken drugs is someone that you should know you need to send out to further medical treatment. And again, they called... Does the record show whether the officers could tell whether he was breathing through this small window? Yes. They heard him snoring and looking through. They saw him moving, saw him laying on the cot, and then when they last went to watch him or look at him, they could not hear him breathing and they went in to check. Actually, each case is factually different. The monitoring really consisted of looking in from time to time and seeing that he was still unconscious. They didn't go in to check his blood pressure, respiration, anything else. They would look in. Maybe he's snoring, maybe he's not, but he's unconscious. So the check-ins that you make reference to is simply looking in from time to time and not disturbing things so long as the man was still unconscious. That's really all that happened here, isn't it? They were watching and observing an intoxicated detainee, yes, sir. They heard him snore. They looked. He was breathing. They could tell he was still alive because he was snoring, but on each occasion he was unconscious that they checked in on him or looked at him. Correct? I don't believe that to be true. No, they didn't physically examine him. They just looked and thought he was unconscious, and that was the checking. Correct. They did not physically check on him. The case law from the Sixth Circuit has said that as long as they are checking on what appears to be an intoxicated inmate, that is not a constitutional violation. Here we're saying that this was not a clearly established right that this person should have been given further medical treatment, therefore there couldn't have been a constitutional violation. Was there objective evidence that this was categorically different from someone who was just really drunk? Not to the officers and not to the medical staff, no, sir. Well, the medical staff is just a lone LPN. And that's not unconstitutional either, Your Honor, to use an LPN. But it's better for the layperson. She's adequate for the circumstances of the patient she's presented with, but that's sort of a question of fact, too, isn't it? And I'm not trying to get into the jail policy or procedure, although you can comment on that as well if you want to, but whether the person, an LPN, can make the determination any more than an officer is not clear in this case, is it? I think it's very clear, Your Honor. The corrections officers have a right to rely on medical staff. They have more training, more information than these people do, and it's reasonable under the circumstances. We believe that the lower court has erred in denial of qualified immunity. We believe that we have shown that there was no constitutional violation because there was no clearly established right, and we ask the court to reverse the lower court. Thank you. All right. Thank you. Good morning, Your Honors. May it please the Court. I'm Louis W. Ringer here on behalf of Samuel McGaugh, Jr. and Lisa Tolkes, the appellee plaintiffs in this case. I believe it's important to take a step back and speak about the jurisdictional framework that should govern this court's review in a case of this procedural posture, permeating this entire case. And as Judge Clay has written several recent opinions of this nature, that a case that comes up on a denial of qualified immunity can only be reviewed for pure questions of law. And we believe, as we've stated in our original motion to dismiss and have restated in our response brief, believe that the county's position and the individual officer's position are stating nothing more than factual questions that have already been determined by the district court at this point. Now, given the procedural posture of this case pre-judgment, those are premature for this court's review. Now, if they would state... Because the district court drew some inferences from the record as to what the reasonable trial issue fact is and that we can't review that, or what exactly do you mean? Reasonable inferences, actually, as Judge Clay authored in his Kendall v. City of Berkeley opinion, are still factual inferences. Facts, questions of facts can be reviewed to the extent that they are so egregiously wrong or they can be demonstrated through something pointed to in the record as actually factually erroneous in their state. What's it mean when the Court of Appeals is supposed to provide de novo review of a summary judgment ruling? Doesn't that mean we're allowed to look at the record, draw the inference obviously in your favor, but then the question of law at that point is whether they win as a matter of law or not. That's the question of law, so what am I missing? Well, Your Honor, from another opinion, I could point to certain types of questions of law and give you examples of the distinguishable difference between a question of law and a question of fact. The doctrinal framework for a deliberate indifference type of case, of course, focuses on the objective nature of whether this was an objectively serious medical condition and then the subjective knowledge of the individual officers of whether they knew that there was a serious risk of the medical condition and that they disregarded that risk. Those are both factual determinations. On the other hand, there are certain types of legal questions, as Judge Rogers actually articulated in his opinion in McKinney v. Lexington-Fayette Urban County Government, where the district court in its analysis of the individual officers in that particular case was questioned whether that was actually individualized enough to be the proper type of review. That is an example of a legal question that would be important or right for this Court's review at this juncture. Let's go to the legal issue then. Is there anything either in what the district court found as fact or as what we could find there be a genuine issue of material fact, however you want to do it, that distinguishes this case from a case where somebody arrives really drunk and passed out? Of the factual points that would distinguish it are many. First and foremost, I would say that I would question the contention that a legal opinion should state that an intoxicated person as a matter of law is not entitled to medical care, constitutionally entitled to medical care. But also, yes, Your Honor, I thought that just to provide context for my answer. This case versus every other, that's the point he's asking. And they have a doctor or a nurse give advice to the officers and the officers follow that advice. So that's the point he's asking. Yes, well, the difference between an intoxicated person and any other case, first and foremost would be just being intoxicated on what? Showing up to a jail intoxicated on alcohol or are you intoxicated on three different, or three opiates, which you then convey that knowledge to the officers, strainingly convey that knowledge to those at the jail. But then also... Then you're saying that then the officers need to know the different effects of all the things you can get high on these days? No, Your Honor, I'm pointing out the difficulty in fashioning a rule that intoxication... I'm just trying to see whether as a matter of law you can say that these people did something wrong if from their perspective it's something that happens frequently, which is somebody comes in so intoxicated that they're totally out of it or whatever. And in the context of alcohol, we sort of know what that means. It means you can put them in there and let them sleep it off, although people die sometimes from the DTs and so forth. We get cases like that as well. What would be problematic, I guess I'm saying, is if we said, well, in this case they were required to do more, even though they checked with the LPN, and even though there's no reason that I know of why they should know the difference between this or that kind of opioid or whatever it is that they're on. To that point, Your Honor, I would say, and we've conceded in our brief, actually, that following the advice or relying on the advice of a medical professional, or in this case someone with some medical training, and that is a factual question. To what level and how long can you then rely on that advice of that medical professional? Over the night. I mean, this is a classic case. Over the night. They dry out. Does that absolve you of all responsibility to continue checking, and does that absolve you of all subjective knowledge under the... They did check every 20 minutes, so your point has to be that they needed to go in, right? Isn't that the essence of the case? That that was the deliberate indifference, not going into the cell? That is one essence of the case, Your Honor. Actually, this case has a number of legal theories that we believe would be viable legal theories. That indeed is one. That is a strong point, yes. I agree. What is your strong... If there's a lot of them, what's your strongest one? Well, I would take the position that the strongest legal position we have is actually against the county. The county's deliberate indifference, but to the individual officer... The obligation of these officers. Yes. What is the strongest way in which you're distinguishing this from the... I don't want to say run-of-the-mill or run-of-the-pill mill. I don't know. Ordinary or frequently occurring case where somebody comes in highly intoxicated. And these days, unfortunately, it's not just liquor, but all kinds of other stuff that they're intoxicated on. Where one might think that normally you can let them sleep it off. We know that sometimes that's not enough. Is it a constitutional rule that you've got to do more every time that happens? Or is there something special about this case which would distinguish it from the mine run case? All right. That's what I'm asking. And you said, oh, there's several ways. I'm trying to say, what's the most persuasive one of those several ways? Well, Your Honor, we're just speaking factually. And the district court's recognition of this, I believe, would control. But when they enter the jail, and every jail has its own policies, and that would depend upon the size of that particular area. And this one happens to be a rural area. But the types of policies that they have would then dictate what those officers would see and what their responsibilities would be. Given the written policies that they were under, they would see a person in a serious medical need. And if it's a person who admits to taking three highly addictive and possibly dangerous opioid drugs. Are you finally getting to the answer to my question? You're saying this is different because he took the opioids. No, Your Honor. Your Honor, actually, that is among. From the generality of cases. That is a concern. If we say in the generality of cases it's constitutionally required to give medical help, that's a big new decision. Inconsistent with at least the implication of a lot of our cases. Unless you can say, well, this case is different. His arm was dangling on a thread or something. If I could speak to the doctrinal framework of how we see the clearly established actual legal question be framed is not whether or not specifically they are required to give medical care to an intoxicated person. But whether or not a person in a serious medical condition is entitled to medical care. And I believe the answer to that is yes. And then the question then becomes, was this a serious medical condition? Which is a factual determination that must be determined on a fact-intensive inquiry on a case-by-case basis. And then I believe Your Honor is asking, what of this particular case would make this a serious medical condition? That these officers had subjective knowledge, was worthy of medical care, constitutionally worthy of medical care. And the ones I would articulate are first and foremost the arrival at the jail with the inability to even express themselves. Now, of course, that is a common occurrence. But I'm trying to give you the totality of this situation. But I'm just asking, instead of the totality, the strongest points. That he was incoherent sounds like a drunk to me. And he was intoxicated. But then again, you have to consider, at what point do we say that one rule of an intoxicated person. I'm going to go against self-interest here and ask you a question about your Johnson versus Jones argument. Which is a very practical question, which I'm just so curious for someone who specializes in 1983 claims. Or at least knows a lot about them, as I assume you do. Here's what I don't understand. So the idea behind your Johnson versus Jones is we won before the district court. And we want to say there's no jurisdiction at the court of appeals. Let's just march to trial. That's the idea behind it. And in one sense you can see how that's very powerful. Because you won't lose at the court of appeals. They don't get to touch the merits. It goes back to the trial court and you can go to a jury trial. The part I never understood about it, and today's panel is a good illustration of this. It's a very representative panel of the court. Why don't you want to hear from us now whether it's a triable issue of fact or not? If you get a ruling from us that this case, just like the district court said, has a material triable issue of fact that has to go to a jury, is there any ground for the officers or the county to appeal if you win at the jury trial? The case is over. You've got a legal ruling from this court that there was a material triable issue of fact suitable for a jury. When you invoke these jurisdictional arguments, you deprive yourself of a ruling early in the case. Now, I said earlier a representative panel. The reason I said that is if it turns out a representative panel of this court is going to say there's not a triable issue of fact, don't you want to know that sooner rather than later? You're going to spend a lot of time setting up a big loss. So I forget the doctrine of Johnson v. Jones. As a pure practical matter, I'm absolutely baffled by why you don't want the rulings from us. Because if it's a bad ruling, I get it, but it's going to come eventually. And if it's a good ruling, it's an awesome ruling. Because you have just established to the county and the officers if they lose the trial, there's nothing that can happen. Because we just said it's a material triable issue of fact. So why are you doing this? Your Honor, the short answer is I want an awesome ruling in this case. Okay, so you don't want Johnson v. Jones. But no. You can't have it both ways, right? You're going to say Johnson v. Jones only if you're ruling against me? You asked me what I want. And I do want an awesome ruling. But we can't do it with your Johnson v. Jones argument. If I take it seriously, I say fine. I'll invoke all these cases. We don't have jurisdiction. Very easy. It will be one-sentence ruling. We'll move on. You can't have it both ways. What do you want? I want the awesome ruling, but I'm following the doctrinal framework that I have read in this Court's recent opinion. But you're not required to invoke Johnson v. Jones. There's no rule out there that says attorneys will be disbarred if they don't argue Johnson v. Jones. I don't have to do it. This is a strategic choice. Well, I appreciate the argument. Are there factual issues in this case? We know what happened and what they knew, how much information they had, right? Yes. I believe the factual issue is articulated by the district court. It's not as articulated by the district court, but they're not really challenging them, are they, the factual determinations? Well, yes. I think at base they've attempted to, in the same way as some of the prior cases, and I understand Judge Sutton's point, but just to go back to this point briefly because I've been asked to, in a way, try to circumvent the jurisdictional limitation on cases that are appealed under this particular doctrine where you get an automatic appeal by stating actual factual issues. The underlying issue that they have essentially raised is whether or not this amounts to a serious medical condition. Does intoxication itself amount to a serious medical condition? That, in and of itself, is a factual determination that must be, or is more appropriately, determined by the finder of facts. Versus Jones or not? Yes or no? Yes, we do. You do. Did you finish your answer to Judge Rogers' prior question? I know you were in the midst of an answer. I didn't hear the complete answer as to what distinguishes this case in terms of the legal requirement that your client or your decedent be provided medical care upon arriving at the jail there. And you started to give the list of things that indicated that he was entitled constitutionally to medical care at that time. Did you complete your answer to that? I did not, Your Honor. I've exhausted my time. I'd be happy to at this time.  Thank you, Your Honor. What I was saying, again, is it was a totality of the situation type of analysis and should be a fact-intensive inquiry. And because of that, each case must be reviewed on a case-by-case basis. It's not worthy of a sweeping legal doctrine that intoxication itself is not worthy constitutional protection. In this case, it involves the showing up at the jail with that level of intoxication that you are unable to communicate. That you have then eventually, when you can communicate, you communicate to them that you've taken three Roxys, which is well-known to be a very strong opiate, and an undisclosed amount of vodka. And then after that point, you know, the continued monitoring shows no movement. Where some prior cases, delirium tremens cases, we've shown movement, at least in the cell. This one doesn't even show that. So all of that in its totality we would submit would be enough to distinguish it from the mere intoxication case. And again, because it is a factual determination, those facts, and I understand Judge Sutton's point, but we would ask the jurisdictional limitation at this juncture be adhered to so that we would then proceed to trial on those issues. And, Your Honor, I will add that this has been my first opportunity to appear before this court. It's been a true honor. Thank you. Congratulations. Any rebuttal? Your Honors, I'll be very brief. Let me ask you this. Are there factual determinations made by the district court in your opinion with which you disagree? We have relied on the district court's facts as well as the plaintiff's complaint. So, no, sir. We're arguing a question of law. Are there any factual contentions of the plaintiff with which you disagree? I'm sorry, what? Are there any factual contentions concerning the subject matter of this case by the plaintiff with which you disagree? Not for purposes of this motion or this appeal, Your Honor. I would like to see. No. Okay, thank you. I would like an awesome ruling. Excuse me? I would like an awesome ruling. Well, wouldn't we all? But I've got to remind the court again that in one of its cases it's cited to the Supreme Court that said a plaintiff has to identify a case with a similar fact pattern that would have given fair and clear warning to officers about what the law requires and then whether it would be clear to a reasonable officer his conduct was unlawful in the situation he confronted. They have cited no cases in arguing my case. They have not distinguished this case. They have not said why this is any different. And there are no cases, shown no cases, similar. That's all I'm going to say. Thank you, Your Honor. All right. Thank you very much. The case is submitted.